# United States Court of Appeals
## For the First Circuit

No. 24-1413

JACINTO XIQUIN XIRUM; BARTOLA ROMERO SANTOS,

Petitioners,

v.

PAMELA J. BONDI, Attorney General,[*]

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Barron, Chief Judge,
Gelpí and Rikelman, Circuit Judges.

Randy Olen for petitioner.

Remi da Rocha-Afodu, Trial Attorney, Office of Immigration
Litigation, with whom Brian M. Boynton, Principal Deputy Assistant
Attorney General, Civil Division, and Sabatino F. Leo, Assistant
Director, Office of Immigration Litigation, were on brief, for
respondent.

June 25, 2025

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2),
Attorney General Pamela J. Bondi is automatically substituted for
former Attorney General Merrick B. Garland as respondent.

**BARRON**, <u>CHIEF JUDGE</u>.  Jacinto Xiquin Xirum and Bartola Romero Santos petition for review of an order from the Board of Immigration Appeals ("BIA") that affirmed the denial of their applications for cancellation of removal.  They challenge the BIA's conclusion that they failed to establish that their removal would result in "exceptional and extremely unusual hardship" to their two United States citizen children.  8 U.S.C. § 1229b(b)(1)(D). The petition is dismissed in part and denied in part.

**I.**

On July 10, 2018, the U.S. Department of Homeland Security initiated removal proceedings against the petitioners. The petitioners applied for cancellation of removal.

"Cancellation of removal permits a noncitizen to remain in the country lawfully." <u>Wilkinson</u> v. <u>Garland</u>, 601 U.S. 209, 212 (2024).  To be statutorily eligible for cancellation of removal, a noncitizen must show, among other things, that "removal would result in exceptional and extremely unusual hardship to [the applicant's] spouse, parent, or child, who is a citizen of the United States or . . . lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1)(D).

If a noncitizen makes the required showing, an immigration judge "decides whether to exercise discretion to cancel the order of removal in [that] particular case." <u>Wilkinson</u>, 601 U.S. at 213.  "A noncitizen bears the burden of proving that

he both 'satisfies the applicable eligibility requirements' and 'merits a favorable exercise of discretion.'"  Id. (quoting 8 U.S.C. § 1229a(c)(4)(A)).

On October 10, 2019, the immigration judge ("IJ") assigned to the petitioners' case denied their applications for cancellation of removal.  The IJ reasoned that the petitioners had not demonstrated statutory eligibility for cancellation of removal because they "did not meet their burden to show that their qualifying relatives, their two United States citizen children[,] would suffer exceptional and extremely unusual hardship if the [petitioners] were to be removed from the United States."

The IJ first examined the evidence of hardship to the children if they remained in the United States following the petitioners' removal.  The IJ reasoned that the petitioners had "provided no detailed information about . . . how [the children's] lives would be impacted if they were not living with the [petitioners], other than that they would be separated from their parents, and their older son may not have their financial assistance to attend college right away."  The IJ further noted that the petitioners were "healthy, and currently work[ing] full time" and that "[t]here is nothing in the record to support their conclusory statements that they would not be able to find sufficient income to assist in paying for their children's living expenses."

The IJ then examined what the evidence showed as to hardship to the children if they joined the petitioners in either Mexico or Guatemala following the petitioners' removal. As to a potential relocation to Mexico, the IJ found that the petitioners "already own a home there" and that nothing in the record suggested that the children could not continue their education there. As to a potential relocation to Guatemala, the IJ found that the record did not demonstrate that the petitioners "would be unable to support the family." The IJ reasoned that "[w]hile the children might receive diminished educational opportunities" and "the family might experience a lower standard of living in Mexico or Guatemala generally," the petitioners had not "demonstrated that the diminished quality of available schools would result in exceptional and extremely unusual hardship" to the children and failed to explain "how the lower standard of living would affect the children specifically, who have no health problems or learning disabilities."

The IJ concluded that the hardship shown did not rise to a level that is "substantially beyond that which would ordinarily be expected to result from the person's departure." (Quoting Matter of Gonzalez Recinas, 23 I. & N. Dec. 467, 468 (BIA 2002)). The IJ therefore concluded that petitioners were statutorily ineligible for cancellation of removal.

The petitioners appealed to the BIA, which affirmed the IJ's decision and dismissed the appeal on March 27, 2024. The BIA highlighted several of the IJ's key findings, such as the finding that both petitioners were "healthy and gainfully employed" and that they owned a home where the family could live in Mexico. The BIA also emphasized the lack of any evidence in the record that would suggest the children would not be able to continue their education in Guatemala or Mexico, given the children's fluency in Spanish and lack of any learning disabilities.

Petitioners filed a timely petition for review.

## II.

### A.

"Where, as here, the BIA 'adopts portions of the IJ's findings while adding its own gloss, we review both the IJ's and the BIA's decisions as a unit.'" Escobar v. Garland, 122 F.4th 465, 473 (1st Cir. 2024) (quoting Paiz-Morales v. Lynch, 795 F.3d 238, 242 (1st Cir. 2015)). "When we discuss the BIA and IJ's decisions as a unit, we refer to the BIA and IJ as 'the agency.'" Nolasco v. Bondi, 134 F.4th 677, 682 (1st Cir. 2025) (quoting Khalil v. Garland, 97 F.4th 54, 61 (1st Cir. 2024)).

A hardship may qualify as "exceptional and extremely unusual" only if it is "substantially different from, or beyond, that which would normally be expected from the deportation of an alien with close family members here." Matter of Monreal-Aguinaga,

23 I. & N. Dec. 56, 65 (BIA 2001). This standard does not require a level of hardship that would be "unconscionable." Id. at 60-61. However, it "is supposed to be hard to meet" because it is "evaluated in comparison to the hardships typically felt by children whose parents are removed from the country," which "in itself sets a high bar." Tacuri-Tacuri v. Garland, 998 F.3d 466, 474 (1st Cir. 2021), abrogation on other grounds recognized by Figueroa v. Garland, 119 F.4th 160, 165 (1st Cir. 2024).

"[C]onsideration should be given to the age, health, and circumstances of the qualifying family members, including how a lower standard of living or adverse country conditions in the country of return might affect those relatives." Matter of Gonzales Recinas, 23 I. & N. Dec. at 468. "Factors relating to the applicant himself or herself can only be considered insofar as they may affect the hardship to a qualifying relative." Matter of Monreal-Aguinaga, 23 I. & N. Dec. at 63.

**B.**

In challenging the agency's hardship ruling, the petitioners take aim at the agency's finding that "nothing in the record supports [the petitioners'] conclusory statements . . . that [they] would not be able to find sufficient income to assist in paying for their children's living expenses" if the children remained in the United States after their removal. They contend that this finding was "outrageous." The petitioners

- 6 -

also appear to challenge the agency's hardship ruling by taking issue with the agency's finding that they would be able to support the family in Guatemala or Mexico and that "there would be no separation of the family" if the children accompanied the petitioners.

Insofar as the petition rests on these specific challenges to the agency's ruling, we lack jurisdiction to consider it, because we lack jurisdiction to review a challenge to an agency's denial of cancellation of removal based on a challenge to an agency's finding of fact. See Wilkinson, 601 U.S. at 225; cf. Gourdet v. Holder, 587 F.3d 1, 7 n.6 (1st Cir. 2009) (characterizing the BIA's predictive determination as a factual finding over which we lack jurisdiction). Accordingly, we dismiss the petition insofar as it challenges these specific agency findings of fact.

## C.

The petitioners separately challenge the agency's hardship ruling on the ground that the evidence in the record sufficed to show a hardship that is "exceptional and extremely unusual" under the BIA's own precedents. They point to evidence that one of the children "was on his way to college" and that this "dream will no longer be possible" in the event of the petitioners' removal; the fact that the record shows that the children "have lived their entire lives in the United States"; and what they

assert was the agency's error in "diminish[ing] the effect of the separation of the children from their parents, relying on overused tropes such as 'separation, without more, is insufficient' to meet the hardship standard."

In this set of challenges, the petitioners appear to be taking issue with the agency's determination that "an established set of facts" failed to rise to the level of an "exceptional and extremely unusual hardship." Wilkinson, 601 U.S. at 212. We thus have jurisdiction over this aspect of their petition. See id. Our review, however, is "deferential," because the challenges concern the agency's application of law to fact. Id. at 222.

The parties seem to disagree as to just what "deferential" means in this context.[1] We need not resolve that dispute, though, because we conclude that there is no merit to these challenges even under the abuse of discretion standard that the petitioners appear to favor. See Nolasco, 134 F.4th at 682.

For one thing, the petitioners fail to explain how a decrease in educational opportunity for their children is a hardship that is "substantially different from, or beyond, that which would normally be expected from the deportation of an alien

_____

[1] The government urges us to adopt the substantial evidence standard of review. See Guzman v. INS, 327 F.3d 11, 15 (1st Cir. 2003) (describing the substantial evidence standard of review). The petitioners, for their part, contend that the agency's hardship determination "is not supported by substantial evidence, and further constitutes an abuse of discretion."

with close family members here," <u>Matter of Monreal-Aguinaga</u>, 23 I. & N. Dec. at 65, given the agency's finding that "both of the . . . qualifying-relative children . . . do not suffer from any learning disability that would impede their progress in school." <u>See</u> <u>Matter of Andazola-Rivas</u>, 23 I. & N. Dec. 319, 323 (BIA 2002) (observing that reduced educational opportunities and economic detriment are insufficient to establish "exceptional and extremely unusual hardship"). For another, they fail to explain how the children's moving away from the country in which they have lived their entire lives would constitute a hardship that is substantially beyond the hardship that would ordinarily result in such a case, given the agency's finding that both children are "fluent" in Spanish and do not suffer from any learning disabilities.

### D.

The petitioners separately argue that the agency's hardship ruling cannot stand because the agency "ignor[ed]" several facts that they contend are relevant to the hardship inquiry. Here, too, we confront a question of law that we have jurisdiction to review. <u>Nolasco</u>, 134 F.4th at 685. Reviewing de novo, <u>see</u> <u>Romilus</u> v. <u>Ashcroft</u>, 385 F.3d 1, 5 (1st Cir. 2004) ("We review questions of law de novo . . . ."), however, we conclude that there is no merit to the contention.

The petitioners first fault the agency for failing to note the fact that the petitioners have "resided in the United States for 26 years, over half their lives," "are hard-working, taxpaying, law-abiding residents who are devoted to the welfare of their children," and have no other means of adjusting their immigration status. But "[f]actors relating to the applicant himself or herself can only be considered insofar as they may affect the hardship to a qualifying relative." Matter of Monreal-Aguinaga, 23 I. & N. Dec. at 63. And the petitioners do not explain how the length and nature of petitioners' residence and immigration status in the United States make the hardship to their children upon their removal "exceptional and extremely unusual."

The petitioners separately contend that the agency "completely ignored" the evidence that they submitted concerning the "economic and political conditions in Guatemala/Mexico." In particular, they contend that the agency "expended not one syllable of analysis" on the effect of the "extremely high levels of crime and violence in both countries . . . . on the Petitioners and their children."

Contrary to the petitioners' assertions, however, the agency explicitly analyzed "how a lower standard of living or adverse country conditions could impact" the qualifying children. It observed that, while the evidence showed that "the family might

experience a lower standard of living in Mexico or Guatemala generally," petitioners had failed to show "how the lower standard of living would affect the children specifically."

### E.

The petitioners also contend that "[c]redible testimony and evidence demonstrated that although some family members reside both in the United States and abroad, none of these individuals are in a position to assist the children, whether they remain in the United States or accompany their parents upon removal." It is unclear what kind of challenge the petitioners wish to be advancing in making this assertion.

It is possible that the petitioners mean to contend that the agency impermissibly ignored the "testimony and evidence" that they describe. If so, we do have jurisdiction to consider such a contention. Nolasco, 134 F.4th at 685.

It is difficult to tell what "testimony and evidence" the petitioners have in mind. They do not cite to the record in making this contention. They appear, however, to be relying on their testimony that they were "not sure" whether the children would be able to stay with their relatives in the United States if they were removed and their son's declaration that he and his sister "could not easily live with" one such relative, their twenty-four-year-old half-sister in Rhode Island.

We fail to see how such a challenge would have merit. The agency explicitly noted both the petitioners' testimony and the son's declaration in its decision.

It is possible that the petitioners also mean to contend that the evidence in the record just referenced, when considered in combination with the other features of the record that we have addressed, requires the agency to find an "exceptional and extremely unusual hardship" to their children. Again, we have jurisdiction to review such a contention. Wilkinson, 601 U.S. at 212. But the petitioners do not develop any argument as to how the evidence in question compels a determination that they have met their burden as to the "exceptional and extremely unusual hardship" requirement. After all, as we have explained, the petitioners themselves appear to accept that our review of the agency's contrary determination must be "deferential," id., and the agency found that the petitioners would be able, on their own, to "pay[] for their children's living expenses" and "support the family" regardless of whether the children stayed in the United States or accompanied petitioners.

**F.**

In the last sentence of their brief, petitioners ask the following question after referencing their contentions about the lower standard of living, the diminished educational opportunities, and adverse country conditions: "[H]ow are these

considerations not compelling when truly viewed 'in the aggregate?'"  The petitioners do not otherwise argue in their brief to us that the agency failed to consider the evidence in the aggregate.  See Matter of Gonzalez Recinas, 23 I. & N. Dec. at 472 ("Part of [the hardship] analysis requires the assessment of hardship factors in their totality, often termed a 'cumulative' analysis.").  Insofar as the petitioners mean to make that argument in their brief, as they did at oral argument, they do not reckon with the part of the IJ's decision that stated that it found the petitioners to have failed to satisfy their burden of demonstrating the requisite hardship after "[c]onsidering the record in its entirety."  Nor do the petitioners address the BIA's subsequent affirmance of the IJ's decision in which the BIA stated that "[t]he [IJ] considered, in the aggregate, the hardship to the [petitioners'] qualifying-relative children . . . ."  Thus, we decline to consider this contention further, as "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); see also United States v. Pizarro-Berríos, 448 F.3d 1, 5 (1st Cir. 2006) ("[A]rguments not raised in a party's initial brief and instead raised for the first time at oral argument are considered waived.").

**III.**

For the foregoing reasons, the petition for review is **dismissed in part** and **denied in part**.